**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANA ORTIZ, ANTHONY ORTIZ, and ANTONIO BRYANT,    ) )<br>      )<br>    Plaintiffs,    )<br>      )<br>   vs.         )<br>      )<br>ILLINOIS DEPARTMENT OF    )<br>CHILDREN AND FAMILY SERVICES,    )<br>et al.,       )<br>      )<br>    Defendants.    ) | Case No. 25 C 3211 |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Ana Ortiz lost custody of her children in juvenile court after they were removed by the Illinois Department of Children and Family Services (DCFS). She and her husband Anthony Ortiz and son Antonio Bryant have filed a *pro se* lawsuit against DCFS and DCFS employees Ruth Mejias, Analia Cobrda, Theresa Reyes, Estrellita Mares, Jane Doe 1, and Jane Doe 2. The plaintiffs have also asserted claims against Jose Vega, the father of two of the children. DCFS has filed a motion to dismiss the second amended complaint. The other named defendants have not yet been served with summons, but a number of DCFS's arguments for dismissal apply to the claims against the other defendants as well. For the reasons stated below, the Court dismisses all of the plaintiffs' claims except for their Fourth Amendment claim against DCFS employees Ruth Mejias, Theresa Reyes, Estrellita Mares, Jane Doe 1, and Jane Doe 2.

**Background**

The following rendition of the facts is taken from the second amended complaint. The Court takes the plaintiffs' factual allegations as true for purposes of the motion to dismiss.

Ana Ortiz has six children. This suit primarily concerns events relating to M.V. and V.V., whose father is Jose Vega, and B.O., who was born during the events described below and whose father is plaintiff Anthony Ortiz. The Court refers to Ana Ortiz as Ortiz from here on.

Vega and Ortiz separated in 2018. The plaintiffs allege that from 2018 until 2024, Vega harassed Ortiz and sought access to their children by making false reports to DCFS. The DCFS defendants, including caseworker Ruth Mejias, colluded with Vega in a "deliberate and fraudulent scheme" to remove the children through fabricated evidence and misrepresentations to Illinois state courts. Second Am. Compl. ¶ 4.

On January 30, 2020, citing concern for the wellbeing of M.V., caseworker Mejias removed Ortiz's children from their school and from the care of Ortiz's mother. Mejias took the children to a hospital for medical examinations. The plaintiffs say that Mejias falsified documents and fabricated witness statements and police narratives to justify the removals. M.V. and V.V. were placed in Vega's custody, and Ortiz's mother was instructed to sign a form granting her temporary custody over the other children, plaintiff Antonio Bryant and his siblings A.B. and L.L. The plaintiffs do not specify how long Ortiz's mother had custody over these three children.

On February 3, 2020, a hearing took place in juvenile court. Ortiz and Vega were provided with investigative material and reports prior to the hearing. DCFS voluntarily

dismissed its petition for adjudication of wardship, and the judge awarded custody of M.V. and V.V. to Vega in a written order. Second Am. Compl., Ex. A. The judge stated that Ortiz could seek custody of the children in family court. At the hearing, the plaintiffs say, Ortiz was not allowed to present evidence, and no trial occurred. The plaintiffs assert that Ortiz was not provided with a copy of the order and allege that it was not discussed in court. In April 2022, Ortiz learned of the order during a family court proceeding in which Vega claimed that the order had terminated Ortiz's parental rights. The plaintiffs allege that other courts have treated the juvenile court order as a conclusive custody determination. Yet the plaintiffs say that when Ortiz appeared before a different juvenile court judge seeking access to her records, the judge told her that the order did not terminate her parental rights.

On May 8, 2020, after investigation of a report against Ortiz related to her newborn child B.O. and a hearing before a DCFS administrative law judge, DCFS voluntarily unfounded the report, finding no credible evidence of abuse or neglect. *Id.,* Exs. B, M. Still, B.O. was removed from Ortiz by DCFS supervisor Analia Cobrda. In April 2022, Cobrda served as a witness on behalf of Vega in a family court matter involving M.V. and V.V. Another DCFS employee, Estrellita Mares, allegedly came to Ortiz's home and photographed her children in the front yard without her consent. The plaintiffs allege that DCFS harassed and surveilled Ortiz through May 2024, making unannounced home visits and searching her mailbox without legal authority. According to the plaintiffs, DCFS operated as if the February 3, 2020 juvenile court order terminated Ortiz's parental rights.

Vega filed a petition in family court in February 2020, and the matter went to trial

in May 2023.  At trial, the plaintiffs say, Ortiz learned that she had received a redacted version of the DCFS file and that Vega had been given an unredacted file.  According to the plaintiffs, the redactions left Ortiz unaware of the transfer of custody of M.V. and V.V. to Vega and unable to challenge the evidence.  In July 2024, Vega obtained an order of protection against the Ortizes and their children, preventing them from contact with M.V. and V.V.  The plaintiffs trace this order and the removal of B.O. to what they characterize as a conspiracy between Vega and DCFS as well as the February 3, 2020 juvenile court order.

The plaintiffs filed the present lawsuit in March 2025.  The Court dismissed the complaint without prejudice because it asserted claims on behalf of Ortiz's minor children, and a pro se litigant can only sue on her own behalf.  The plaintiffs filed an amended complaint but once again asserted claims on behalf of a minor, Antonio Bryant.  The Court dismissed the claims brought on Antonio Bryant's behalf and permitted the other claims to proceed.  The plaintiffs then sought leave to file a second amended complaint to include Bryant as a plaintiff, as he had turned nineteen.  The Court granted the motion to amend.  The operative complaint includes claims under 42 U.S.C. § 1983 for "Deprivation of Due Process and Familial Association Rights" and violations of the Fourth Amendment, as well as a claim against DCFS and its officials under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and state law claims for fraud and intentional infliction of emotional distress.

DCFS has moved to dismiss the second amended complaint.  As indicated earlier, the other named defendants have not yet been served with summons.  A number of DCFS's arguments, however, concern the viability of the claims against all of

the defendants, and the Court addresses those arguments accordingly.

**Discussion**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Put differently, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]'" *Hughes v. Nw. Univ.*, 63 F.4th 615, 628 (7th Cir. 2023) (quoting *Twombly*, 550 U.S. at 555). In ruling on a Rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024). In addition, the complaint of a pro se litigant like the plaintiffs here is "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**A.** ***Rooker-Feldman* doctrine**

Because "federal courts possess limited jurisdiction, and '[j]urisdiction is power to declare the law,' the first step in any federal lawsuit is ensuring the district court possesses authority to adjudicate the dispute—in short, that it has jurisdiction over the subject matter." *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 550 (7th Cir. 2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). If a federal court determines that it lacks subject matter jurisdiction, it only has the power to "announc[e]" the jurisdictional defect and "dismiss[ ] the cause." *Steel Co.*, 523 U.S. at

5

94 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

The jurisdiction of federal courts is limited by the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine recognizes that Congress has not 'authorize[d] district courts to exercise appellate jurisdiction over state-court judgments.'" *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 765 (7th Cir. 2024) (en banc) (Hamilton, J.) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002)) (cleaned up). But the doctrine applies in narrow circumstances, and district courts must "disclaim jurisdiction only in 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 766 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

The Seventh Circuit recently applied the *Rooker-Feldman* doctrine to a lawsuit brought by a mother who lost custody of her child. It explained that *Rooker-Feldman* "blocks federal jurisdiction" when four elements are satisfied:

> *First*, the federal plaintiff must have been a state-court loser. *Second*, the state-court judgment must have become final before the federal proceedings began. *Third*, the state-court judgment must have caused the alleged injury underlying the federal claim. *Fourth*, the claim must invite the federal district court to review and reject the state-court judgment.

*Id.* A "safety valve" exception limits the reach of *Rooker-Feldman*. *Id.* at 778. Specifically, "*Rooker-Feldman* does not apply to bar jurisdiction over a plaintiff's federal claim if she did not have a reasonable opportunity to raise her federal issues in the state courts." *Id.* at 766.

In this case, the underlying state court judgment at issue in several of the plaintiffs' claims is the February 3, 2020 juvenile court order regarding custody of V.V.

6

and M.V. One of the federal plaintiffs, Ana Ortiz, lost custody of V.V. and M.V. through this order. The parties do not dispute that the order was a final judgment, as according to the plaintiffs, the order had preclusive effect on other courts and barred Ortiz's efforts to regain custody.

The Court examines each claim in turn to assess the third *Rooker-Feldman* element, whether the state court judgment caused the alleged injury. "[C]laims based on injuries that are 'independent' of the state-court judgment (i.e., injuries that were not caused by that judgment) are not barred." *Id.* at 766 (quoting *Exxon Mobil Corp.*, 544 U.S. at 293). An injury that was complete prior to the state court judgment is independent of it. *Id.* at 767.

Count 1 of the complaint alleges violations of the plaintiffs' rights to due process and familial association through "[t]he removal and continued deprivation of custody" as a result of "falsified reports, fabricated evidence, concealment of critical orders, unauthorized searches, intimidation, and retaliatory acts" in the absence of a valid court order. Second Am. Compl. ¶ 48. Although some of the events described occurred prior to the state court judgment, these injuries were not complete before the state court judgment. Ortiz was deprived of custody by the judgment, and the falsified reports and concealment of orders would not have affected Ortiz absent that judgment. *See Gilbank*, 111 F.4th at 768 (Hamilton, J.) (concluding that the plaintiff's procedural due process claim "satisfie[d] the third element" as the lack of notice of a custody hearing and fraudulent statements in state court proceedings "would have been harmless if the . . . hearing had gone her way"). The same goes for the plaintiffs' claims of fraud and intentional infliction of emotional distress. The fabricated evidence, concealed custody

7

order, and "prolonged separation of mother and child" are all injuries caused by the state court judgment. Second Am. Compl. ¶ 57.[1]

Two claims remain in which the state court judgment does not appear to have caused the injury: the Fourth Amendment claim based on unlawful entries onto Ortiz's property, which occurred from about 2022 to 2024, and the *Monell* claim alleging systemic due process issues within DCFS. The events underlying the Fourth Amendment claim occurred after the February 2020 order but appear independent because that order said nothing about DCFS entering or searching Ortiz's property. If the *Monell* claim rested solely on the constitutional violations alleged in count 1—the plaintiffs' due process and familial association claim—their injury would be caused by the state court judgment for the purposes of *Rooker-Feldman*. *Gilbank*, 111 F.4th at 769 (Hamilton, J.). But one of the two versions of the *Monell* claim also cites "unauthorized surveillance," which appears to be a reference to the Fourth Amendment claim, and, as best as the Court can tell at this point, the injury corresponding to that claim is independent of the state court judgment.

The fourth element of *Rooker-Feldman* doctrine, as explained by a different majority opinion in *Gilbank*, concerns whether the plaintiff asks the district court to "[r]eview and reject[]" a state-court judgment, which occurs when the plaintiff "asks a federal court to 'overturn' or 'undo' the state court judgment." *Id.* at 792 (Kirsch, J.) (quoting *Exxon Mobil Corp.*, 544 U.S. at 287 n.2, 292–93). The key focus is on the

---

[1] The second amended complaint lists counts 1–5 and then contains a second, slightly different version of counts 3–5. The Court considers both versions of counts 3–5. The Court does not consider the violations of the Equal Protection Clause raised in the plaintiffs' response to the motion to dismiss, as no such claim is asserted on the face of the complaint.

"relief sought" and "whether the relief a plaintiff seeks would reverse a state court judgment." *Id.* at 793.

The plaintiffs ask the Court to declare the February 2020 order "void and unenforceable as a product of fraud and due process violations," enjoin DCFS and state courts to remove the order from their files, and order expungement of DCFS records based on the order.[2] Second Am. Compl., Prayer for Relief. Any of these forms of relief would require the Court to review and effectively overturn the state court judgment, which the Court may not do.

The intentional infliction of emotional distress claim, however, does not appear to invite the court to review and reject the state court judgment as the Seventh Circuit has construed that element of the *Rooker-Feldman* doctrine. The claim focuses on conduct and injuries that have already occurred, so the Court understands the claim to seek compensatory damages. The state court judgment, however, involved non-monetary relief, specially a determination regarding child custody. "[A]warding damages usually does not affect a state court judgment not sounding in monetary terms." *Gilbank*, 111 F.4th at 792 (Kirsch, J.). In *Gilbank*, the Court held that "awarding Gilbank damages could do nothing to the custody judgment because: (1) the custody dispute is over; and (2) even if it were not, the judgment provided equitable relief that an award of damages

---

[2] DCFS seeks dismissal on the basis that the plaintiffs improperly seek expungement of DCFS records, which would contravene the administrative scheme established for appeals of child abuse and neglect findings. The Court lacks jurisdiction over any claims requesting expungement and satisfying the other elements of *Rooker-Feldman* doctrine. But requesting relief to which the plaintiffs are not entitled is not a proper basis for dismissal of the claim as a whole, as the plaintiffs have requested some relief (such as compensatory damages) which the Court could award. *See Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002).

would not undo." *Id.* at 798. Although Ortiz, unlike Gilbank, has not regained custody of her children, here, too, compensatory damages would not reverse the state court's custody determination, so the intentional infliction of emotional distress claim is not barred by *Rooker-Feldman*.

Finally, *Gilbank* described the Seventh Circuit's narrow "safety valve" exception to *Rooker-Feldman*, which applies "'if a plaintiff lacked a reasonable opportunity to litigate' an issue in state court," *id.* at 778 (Hamilton, J.) (quoting *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 605 (7th Cir. 2008)), due to "'factors independent of the actions of the opposing parties,' such as state-court procedural barriers, [which] prevented the plaintiff from asserting her rights in state court." *Id.* (quoting *Jakupovic v. Curran*, 850 F.3d 898, 904 (7th Cir. 2017)). "[S]tate law must 'have effectively precluded' raising the issue in state court" for the safety valve to apply. *Id.* (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558–59 (7th Cir. 1999)). The plaintiffs do not viably contend that structural procedural barriers prohibited Ortiz from asserting her rights. Although Ortiz says that the state court proceedings were deeply flawed and a custody determination was made without a hearing, there is "no *Rooker-Feldman* exception for egregious errors or serious injuries." *Id.* at 780. Nor is there an "exception to *Rooker-Feldman* based on a federal plaintiff's allegation that her state-court opponents or others misled or defrauded the state court into causing her injury." *Id.* at 785.

Under the *Rooker-Feldman* doctrine, the Court lacks subject matter jurisdiction over Ortiz's due process and fraud claims. This requires the dismissal of Counts 1 and 4, as well as Count 3 to the extent it is based on Count 1.

**B.    Preclusion**

DCFS also raises a defense of preclusion, arguing that the Court cannot adjudicate the plaintiffs' claims to the extent that they challenge the February 2020 state court order.  DCFS references and cites caselaw on collateral estoppel (issue preclusion), but it also argues that claims related to the February 2020 state court order are entirely precluded, so the Court reads DCFS's motion to invoke claim preclusion and collateral attack as well.

The law of the jurisdiction rendering the state judgment at issue governs preclusion.  *Arlin–Golf, LLC v. Village of Arlington Heights,* 631 F.3d 818, 821 (7th Cir. 2011).  Under Illinois law, when the requirements of claim preclusion are met,  "[t]he bar to subsequent litigation 'extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit.'"  *Baek v. Clausen*, 886 F.3d 652, 660 (7th Cir. 2018) (quoting *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302, 703 N.E.2d 883, 889 (1998)).  But the intentional emotional infliction of distress claim, the only claim challenging the February 2020 order and not barred by *Rooker-Feldman*, was not actually decided in the February 3, 2020 state court proceedings, nor could it have been decided; it was not relevant to the proceedings brought by DCFS and could not have been asserted as a defense or counterclaim in those proceedings.

But another form of preclusion applies under Illinois law:  the plaintiffs' intentional infliction of emotional distress claim constitutes a collateral attack on the state court judgment granting Vega custody of M.V. and V.V.  "'A collateral attack on a judgment is an attempt to impeach that judgment in an action other than that in which it was

11

rendered.'" *Thomas v. Sklodowski*, 303 Ill. App. 3d 1028, 1033, 709 N.E.2d 656, 659 (1999) (quoting *Buford v. Chief, Park Dist. Police*, 18 Ill. 2d 265, 271, 164 N.E.2d 57, 60 (1960)). "[A] final judgment rendered by a court of competent jurisdiction may only be challenged through direct appeal or procedure allowed by statute and remains binding on the parties until it is reversed through such a proceeding." *Fakhoury v. Pappas*, 395 Ill. App. 3d 302, 313, 916 N.E.2d 1161, 1172 (2009). The plaintiffs' intentional infliction of emotional distress claim seeks damages for the "prolonged separation of mother and child" that was caused by the state court's February 3, 2020 custody determination. Second Am. Compl. ¶ 57. In essence, the plaintiffs are claiming damages for emotional distress they suffered as a result of losing in state court. If that is not a collateral attack on the state court's judgment, it is difficult to see what would be. The plaintiffs cannot seek in federal court damages resulting from Ortiz's loss in state court. The plaintiffs respond that the state court order was void or issued in the absence of jurisdiction, but they come nowhere near a showing of "fraud in the procurement of the judgment or lack of jurisdiction in the rendering court." *Apollo Real Est. Inv. Fund, IV, L.P. v. Gelber*, 403 Ill. App. 3d 179, 189, 935 N.E.2d 963, 972 (2010). The Court concludes that the intentional infliction of emotional distress claim, count 5, is precluded.

For the same reasons as Count 5, Counts 1, 3, and 4 are dismissed based on preclusion, even if the *Rooker-Feldman*-based dismissal of certain of those claims is infirm. That leaves the Fourth Amendment claim, Count 2. The Court cannot discern from DCFS's filings an argument that this claim is barred by any preclusion doctrine.

**C.      Eleventh Amendment and section 1983**

DCFS argues that it is not a proper defendant on the plaintiffs' *Monell* claim for

two reasons:  it is immune from suit under the Eleventh Amendment, and it is not a

proper defendant on a section 1983 claim.  Under the Eleventh Amendment, "[t]he

Judicial power of the United States shall not be construed to extend to any suit in law or

equity, commenced or prosecuted against one of the United States by Citizens of

another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

"Although this language does not 'by its terms . . . bar suits against a State by its own

citizens,' the Supreme Court 'has consistently held that an unconsenting State is

immune from suits brought in federal courts by her own citizens as well as by citizens of

another State.'"  *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 520 (7th Cir.

2021) (quoting *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)).  Eleventh

Amendment immunity extends to state agencies and state officials in their official

capacities.  *Id.*  DCFS is a state agency that is entitled to Eleventh Amendment

immunity.  *See Woods v. Illinois Dep't of Children and Family Servs.,* 710 F.3d 762, 764

(7th Cir. 2013).  Additionally, 42 U.S.C. § 1983 establishes a cause of action against

certain "person[s]," and "neither a state nor a state agency like DCFS is a 'person' for

purposes of § 1983."  *Ryan v. Illinois Dep't of Child. & Fam. Servs.*, 185 F.3d 751, 758

(7th Cir. 1999); *see Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64 (1989)).

Eleventh Amendment immunity protects DCFS against suit in federal court.

DCFS is entitled to dismissal on this basis of all claims asserted against it.

**D.      Statute of limitations**

DCFS also argues, partly in the alternative to its *Rooker-Feldman* and Eleventh

Amendment arguments, that the plaintiffs' section 1983 claims are barred by the statute of limitations. "Claims under § 1983 borrow the statute of limitations for personal injury actions in the state in which the cause of action arose." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 477 (7th Cir. 2024). "[T]he limitations period applicable to § 1983 actions brought in Illinois is the two-year period for general personal injury actions set forth in 735 ILCS 5/13–202." *Woods*, 710 F.3d at 766.

"[F]ederal law governs the accrual of § 1983" claims. *Cielak*, 112 F.4th at 477. A claim accrues "when a plaintiff knows the fact and the cause of an injury." *Id.* (quoting *Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017)). When a plaintiff can sue and obtain relief, a claim has accrued, even when "the full extent of the injury is not then known or predictable." *Wallace v. Kato,* 549 U.S. 384, 391 (2007) (internal quotation marks and citation omitted). Claims under *Monell* are governed by the accrual rules for section 1983 claims generally, and a claim "accrue[s] when the plaintiff knows or should have known that his constitutional rights were violated." *Licari v. City of Chicago*, 298 F.3d 664, 668 (7th Cir. 2002).

The plaintiffs filed this suit on March 26, 2025, so the statute of limitations bars any section 1983 claims that accrued prior to March 26, 2023. To the extent the Court retains any jurisdiction over count 1, the plaintiffs' due process and familial association claim, that claim is barred by the statute of limitations because the injury occurred in February 2020, when Ortiz's children were removed from her custody. Count 3, the *Monell* claim based on this underlying constitutional violation, is also time-barred.

This leaves Count 2, the Fourth Amendment claim. It reads as follows:

50.    DCFS agents unlawfully entered Plaintiff's property, interrogated her children without parental consent, attempted to search her home under false

14

pretenses, and removed her children without a warrant, judicial order, or exigent circumstances.

51.    Defendant Estrellita Mares took unauthorized photographs of the children's bodies without a court order or consent.  Jane Doe 1 and Jane Doe 2 trespassed onto Plaintiff's property, shouted for the children, opened her mailbox without a warrant, and attempted to unlawfully gain access to her home.

52.    These acts constituted unlawful searches and seizures under the Fourth Amendment and were also violative of the family's due process rights under the Fourteenth Amendment.

Second Am. Compl. ¶¶ 50–52.  Based on earlier allegations in the complaint, the events encompassed in the Fourth Amendment claim (which, given its Fourth Amendment basis, is premised on events at Ortiz's home) involves events alleged to have occurred at the following times:

- January 30, 2020:  removal of certain children from Ortiz's home, *see id.* ¶ 12;

- May 8, 2020:  removal of newly born child from Ortiz's home, *see id.* ¶ 24;

- April 2022:  alleged intrusion at Ortiz's home, photographing of children who were in the front hard, *see id.* ¶¶ 25–26;

- "through May 2024":  "unannounced visits" and a search of Ortiz's mailbox, *see id.* ¶ 29.

Each alleged violation of the Fourth Amendment stands on its own and gives rise to a fresh claim, and "a Fourth Amendment claim accrues at the time of the search or seizure[.]"  *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016).  Any Fourth Amendment claims arising from the alleged intrusions in 2020 and 2022 are time-barred because the plaintiffs did not file suit until March 2025.  The only potential Fourth Amendment claim that potentially is not barred by the statute of limitations involves the allegations in paragraph 29 of the second amended complaint, involving "unannounced

visits"[3] and a search of Ortiz's mailbox.

The plaintiffs contend that the purported fraudulent concealment of the February 2020 order and the unredacted records toll the statute of limitations regarding any otherwise time-barred claims. They cite 735 ILCS 5/13-215, which applies to "affirmative acts or representations by defendants which were designed to prevent and, in fact, did prevent, plaintiff from discovering his claim." *Gredell v. Wyeth Lab'ys, Inc.*, 346 Ill. App. 3d 51, 60, 803 N.E.2d 541, 548 (2004); *see also Smith v. City of Chicago Heights*, 951 F.2d 834, 837–38 (7th Cir. 1992) (evaluating whether Illinois fraudulent concealment statute applies to a section 1983 claim). It is hard to understand how the defendants acted to affirmatively prevent discovery of a claim when the plaintiffs filed in 2022—within the statute of limitations—a suit alleging constitutional violations based on the removal of Ortiz's children and then voluntarily dismissed it. *See Ortiz v. Mejias,* No. 22 C 5362 (N.D. Ill. Sept. 30, 2022). Nor does equitable tolling, which the plaintiffs briefly reference based on the purported concealment of the documents, apply to this case.

The plaintiffs also argue that the continuing violation doctrine tolls the statute of limitations. The continuing violation doctrine applies "when the state actor has a policy or practice that brings with it a fresh violation each day." *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018) (quoting *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006)). But the doctrine "does not save an otherwise untimely suit when a discrete incident of unlawful conduct gives rise to continuing injuries because the plaintiff can bring a single

---

[3] The Court does not intend by this to suggest that simply going up to the front door of a home and knocking or ringing a doorbell violates the homeowner's Fourth Amendment rights. That is a matter for later determination.

suit based on an estimation of total injuries[.]" *Id*. at 646–47. In count 1, the plaintiffs allege discrete acts of misconduct by DCFS that took place in 2020, including removing children from Ortiz's custody and fabricating evidence. The continuing *effects* of these violations do not make them continuing *violations*.

## E.    Rule 12(b)(6)

DCFS additionally argues that the complaint fails to state a claim under Rule 12(b)(6). Although DCFS devotes several paragraphs to the Rule 12(b)(6) standard, it references only one pleading deficiency in the complaint, that Anthony Ortiz and Antonio Bryant fail to allege facts entitling them to relief. The only allegations related to Anthony Ortiz and Antonio Bryant are the assertions that Bryant is 19 years old and that both of them suffered "significant emotional, psychological, and familial damages." Second Am. Compl. ¶ 2. No viable legal basis for relief on their part is alleged. DCFS has successfully argued that these plaintiffs fail to state a claim.

## Conclusion

For the foregoing reasons, the Court dismisses Counts 1, 3, 4, and 5 of the second amended complaint, as well as Count 2, with the exception of any Fourth Amendment claim by Ana Ortiz arising from the incident(s) in May 2024 alleged in paragraph 29 of the second amended complaint. The Court also dismisses any claims asserted by plaintiffs Anthony Ortiz and Antonio Bryant and dismisses any and all claims against DCFS based on Eleventh Amendment immunity. The remaining claim— arising from the incident(s) in May 2024 at Ana Ortiz's home—does not identify which particular individual defendant(s) were involved in that incident and thus is not, in its current form, asserted against any particular individual, as required for a claim under 42

U.S.C. § 1983. If Ana Ortiz wishes to pursue her Fourth Amendment claim from the May 2024 incident(s), she must file, by January 5, 2026, a proposed third amended complaint confined to that claim and naming, to the extent possible, the individuals alleged to have violated her Fourth Amendment rights. (If Ms. Ortiz does not know some or all of the names, she should identify the individual as John Doe or Jane Doe.) If Ms. Ortiz does not do so, the Court will enter final judgment. The telephonic status hearing set for December 16, 2025 is vacated and reset to January 12, 2026 at 8:50 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 10, 2025